UNITED STATES *v.* RIED.

*(District Court, W. D. Michigan, S. D.   April 5, 1890.)*

1. POST-OFFICE—USE OF MAILS TO DEFRAUD—SPIRITUALISM—EVIDENCE.
    Defendant was indicted for using the mails in furtherance of a scheme to defraud, by soliciting money upon the representation that by an unknown power he was able to answer sealed letters addressed to spirit friends.   The government, to show the fraudulent character of the defendant's business, introduced admissions of defendant that the business was fraudulent.   *Held,* not competent for defendant to show by the testimony of persons sending him such letters that in particular instances he had answered them satisfactorily, and that the questions were of such a character that he could not have answered them except by supernatural power.

2. SAME—DEMONSTRATIONS OF OCCULT POWER.
    In such a case the defendant will not be permitted to give a test or exhibition of his unknown power in open court.

3. SAME—FRAUDULENT INTENT—EVIDENCE—BELIEFS.
    The belief of the defendant as to his capacity or power to get answers to questions contained in sealed letters from the spirits of the departed is one of the questions of fact bearing upon intent.

4. SAME—CONDUCT—EFFECT.
    A man may believe what he will, and the right of association for the promulgation of his belief is complete; but he will not be allowed to carry his belief into conduct which is injurious to the public, and contrary to law.   This is the difference between belief and action, of opinion and conduct, in practical matters.

5. SAME—FRAUDULENT INTENT.
    Upon the question whether there is an intent to devise a scheme to defraud, the rule is this:   If the scheme be adapted in its plan to work a fraud upon others, and

the defendant knew that a material representation therein contained, and calulated to deceive, was not true, or if he did not believe that it was true, then the intent is made out.

6. SAME—PROVINCE OF HUMAN UNDERSTANDING.

No man has a right to embark in a business, and insist that the legality of it shall be tested by principles beyond the understanding of others, and not by the apprehension of the courts and juries of the country, if when tried and tested by common human understanding the purpose is found mischievous and unlawful. The jury are not to disregard their own convictions by reason of a cloud of mysteries which they cannot penetrate.

(*Syllabus by the Court.*)

At Law.

Defendant was indicted for a violation of section 5480 of the Revised Statutes. The testimony on the part of the government showed that defendant had for some time made use of the mails in sending out circulars and advertisements, of which the following is a sample:

"Dr. W. E. Ried, the Spirit Postmaster; or, how to obtain a sealed letter from your spirit friends. In the first place, take a moment's time to understand fully what a sealed letter consists of. If you are troubled about financial matters, sickness of any description, family troubles, or are undecided what to do about any special matter. think your matters over carefully, and then follow the directions given below implicitly, and your letter will receive prompt attention: *First.* Write the full name or names of your spirit friends on slips of paper. *Second.* Address them by terms of relationship or friendship. *Third.* Ask your question. *Fourth.* Sign your own name in full. When this is done, place your question in an ordinary envelope, and seal it. Write a few lines on another sheet of paper, giving instructions to whom the replies should be sent, and place your sealed letter and note of instructions in a larger one, and address, Dr. W. E. Ried, 28 Canal St., Grand Rapids; 'Personal' in one corner. Dr. Ried has answered several thousand letters during the past two years, and has been uniformly successful. Of course, there are cases where nothing can be obtained, and invariably the money will be refunded if no answer can be given. Fee for answering sealed letter, $1.00, if above directions are followed, and 6 cents extra for postage. If sewed in any manner, $5.00. If sealed with wax, $5.00."

The government showed that in answer to such circulars and advertisements the defendant had received a large number of letters with the required fee inclosed. As bearing on the fraudulent character of the business, numerous statements of the defendant were shown tending to prove the business to be a fraud, as also evidence tending to show that some time previous to the dates alleged in the indictment defendant had acquired a knowledge of the "trick" of opening a sealed letter by an exchange of "tricks" with another person. The defense offered to show that in particular instances the defendant had satisfactorily answered sealed letters, by the testimony of persons sending them, and that the questions answered were of such a character that defendant could not have answered them except by supernatural power. This testimony was excluded, as not meeting the case made by the government, and as amounting merely to evidence of the opinions of others upon the merits of particular performances. The defendant's counsel also asked the privilege of allowing the defendant to give an exhibition or test of his power in open court. This was denied. The defendant was not sworn as a witness.

*L. G. Palmer,* U. S. Atty., and *F. W. Stevens,* Asst. U. S. Atty.

*F. S. Donaldson, L. V. Moulton,* and *Dennis L. Rogers,* for defendant.

SEVERENS, J., (*charging jury.*) The indictment in this case, in several counts charges what, for practical purposes, may be regarded as substantially the same offense. The substance of the charge is that the defendant, having contrived a scheme to defraud the public, employed the mails of the United States in the prosecution of that scheme. That, shortly stated, is the substance of the offense with which the defendant is charged. There is a statute of the United States upon which this indictment is framed, which, in effect, makes the use of the United States mails in furtherance of a scheme to defraud, previously formed by the party so using the mails, an offense; the policy being to prevent the facilities afforded by our postal arrangements from being employed in uses which are prejudicial to the interests of the public. The defendant in this case founds his defense upon the claim, as urged by his counsel, that this was not a scheme to defraud. In order to lay the foundation, and establish the first ground of the accusation contained in this indictment, as the jury will see from what the court has just said, it is necessary that the scheme should be fraudulent; and, secondly, that the mail should be used in the prosecution of that scheme. The question of fact is, upon this first head, what was the intention, or, more precisely, what was the belief, of the defendant as to his capacity or power to get answers to questions contained in sealed letters from the spirits of the departed? Now, gentlemen, every man has an absolute right to believe what he will. It is a phase of religious privilege which is guarantied by the fundamental law of the land to every citizen. This right of belief, and the right of association for its promulgation, is complete, and the party holding any belief may engage in any practice founded upon it, unless he thereby injures the peace and welfare of the public. A man may not carry his belief into conduct which is injurious to the public, and contrary to law. This is a distinction of great importance, in view of the guaranty of religious freedom and of opinion in all matters of belief which is secured by the constitutions of the several states, and in large measure by the constitution of the United States. It is the difference between belief and action, of opinion and conduct, in practical matters. If a man carries his belief into a practice or business involving a fraud, and known by him to be such, he is liable to be dealt with by the law; and if he also uses the mails to promote such business, he is liable to indictment and punishment in the courts of the United States. The interests of society require that every man's conduct should conform to the law; and while it protects him in his freedom of opinion and belief in all religious or spiritual matters, it will not permit him, under the guise of that belief, to do a thing which the laws of the country condemn. To permit this (to employ the language of the supreme court of the United States in dealing with an analogous question) would be to make the professed doctrines of religious belief superior to the law of the land, and, in effect, to per-

mit every citizen to become a law unto himself. There could be no government under such circumstances, and it could not be tolerated.

Upon the question whether there is an intent to devise a scheme to defraud, the rule is this: If the scheme be adapted in its plan to work a fraud upon others, and the defendant knew that a material representation therein contained, and calculated to deceive, was not true, or if he did not believe that it was true, then the intent is made out. So that the material question here is, did the defendant devise his scheme of business in good faith? Did he believe that he could obtain answers to sealed letters from the spirits of the departed relatives and friends of the inquirers? Evidence has been laid before you bearing upon this question, and you are the sole judges of its weight, credit, and the effect to be given to it. You are to look at this proof, and determine the issue by the exercise of your own sound sense. You must not abandon the search of truth upon the suggestion that the elements of inquiry are not open to your pursuit, if your reason seems to you sufficient to see the facts. In other words, you are not to disregard or fail to give effect to your own convictions upon the testimony about the facts by reason of a cloud of mysteries which you cannot penetrate. For the purpose of administering the law, we must adhere to what is practical, and solve all questions by the best practical means at hand. No man has a right to embark in a business, and insist that the legality of it shall be tested by principles beyond the understanding of others, and not by the apprehension of the courts and juries of the country, if, when tried and tested by common human understanding, the purpose is found mischievous and unlawful. In order to convict this respondent, you must find upon the evidence, beyond a reasonable doubt, that he did not believe that he could do what he pretended he could do. All the other questions in the case are eliminated by concessions, so that the whole case is resolved into the questions of the defendant's good faith in the conception and prosecution of his scheme. If he acted in good faith, then there was nothing criminal in what he did; because the law looks, in determining this question of fraud, to the intent with which the act charged to have been done was done. The court does not feel called upon to elaborate any more fully in these instructions to the jury in this case, for the reason that, as already stated, the point is simple. There is but one question of fact for you to determine in view of the testimony in the case, and that is, to repeat it again, did the defendant believe that what he pretended he could do he could do? It is a question of actual good faith. If this was a scheme gotten up by him, without any belief on his part that he could get answers to sealed letters from the spirits of the dead, and if, without regard to the question of his ability to do this, he devised this scheme for the purpose of imposing upon and gulling the public, and getting money through that means, it was a fraud, and should be denounced as such. If, on the other hand, he honestly believed that he could do this which he advertised he could do, then there is no fraud.

Now, gentlemen, you must apply your own sound discretion and common sense to the case, and determine it, in view of what is conceded, upon the effect which you give the testimony in the case upon the point which has been presented as the issue.

An officer may be sworn.

The jury having found the defendant guilty, a motion for a new trial was subsequently argued before the district judge, the circuit judge sitting with him upon the request of the defendant, upon alleged errors in the rejection of testimony, the refusal to permit a test, and in the charge to the jury. After full argument, the motion was denied.