Carpinelli et al. *v.* Reading Co., Appellant.

Argued December 3, 1931. Before FRAZER, C. J., WALLING, SIMPSON, KEPHART, SCHAFFER, MAXEY and DREW, JJ.

*William Clarke Mason,* for appellant.—Plaintiffs did not prove that the person charged with wrongdoing was an employee of Reading Company.

The undisputed facts show that the evidence of the plaintiffs as to the negligence charged against defendant is incredible and that the judgments below are without legal foundation.

Courts are not required to believe that which is contrary to human experience and the laws of nature or which they judicially know to be incredible: Horen v. Davis, 274 Pa. 244; Folger v. Rys., 291 Pa. 205.

*N. S. Winnet,* for appellees.

OPINION BY MR. JUSTICE MAXEY, January 5, 1932:

The question in this case is, Was there sufficient evidence to support the jury's finding that the act which resulted in injuries to the minor plaintiff was committed by defendant's servant? The claim was that the fifteen year old plaintiff, Henry Carpinelli, while "stealing a ride" on a freight car of the defendant when the car was in motion, was ejected with such force by the defendant's servant that he sustained injuries which resulted in the loss of his leg. The defendant denied that any of its servants committed the act complained of. The minor plaintiff testified that after he and another boy had ridden about half a block on the coal car he heard someone "holloa" and upon looking up he saw it was a brakeman. The latter was standing on the platform between the two cars. The boy said he knew the

man was a brakeman because he "knew one when he saw one" and that he "was dressed in old clothes, with overalls and dirty shirt on." The boy testified that the brakeman said, "Youse two get off." The boy replied, "I can't." The man repeated the order and cursed the boy. The man also threatened to throw him off. The boy testified that the brakeman raised his hand and threw something at him which hit him in the eye. The boy then fell off. He became unconscious and remained so on his way to the hospital. He was in the hospital several months during which time it was found necessary to amputate his right leg. The other boy who boarded the train with the minor plaintiff substantially corroborated the latter's testimony.

Another boy testified that he saw the minor plaintiff's companion, Flori Gagliardi, being chased off by the brakeman and that the brakeman was standing in the front of the last car. When asked how he knew he was the brakeman, he answered, "He was in his working clothes." He also heard the minor plaintiff arguing with the "brakeman." He saw the brakeman throw a stone and hit Henry in the eye. Henry then fell down, rolled over, and his foot caught in the front wheels of the last car. The train stopped and according to the witness's testimony the train crew of three men came running over. The witness said one of them he knew as the brakeman. When asked if he had seen him before, he said, "Yes, I seen him when he came past me and threw the stone at him."

The appellant contends that on account of the insufficiency of plaintiff's evidence it was entitled to binding instructions in the court below. It is difficult to lay down any exact rule by which the amount of evidence sufficient to carry a case to a jury can precisely be determined. In Mars v. P. R. T. Co., 303 Pa. 80, at page 88, we said in substance that if a fact is deducible as a reasonable inference from the facts and conditions directly proved, it cannot justly be classed as a mere con-

jecture or surmise or guess, and that in both civil and criminal law, circumstantial evidence is competent evidence. In that case we cited the language of Chief Justice BIGELOW in Com. v. Jeffries, 7 Allen (Mass.) 548, 563, in which he said, "The process of ascertaining one fact from the existence of another is essential to the investigation of truth, and prevails in courts of law as well as in ordinary affairs of life." Wigmore in the second edition of his Evidence, volume 1, section 27, page 232, says that "The conclusions and tests of every day experience must constantly control the standards of legal logic."

In the case before us we believe that according to the tests of everyday experience the court was justified in submitting to the jury the question of the identity of the individual who committed the tort testified to. As the appellee has pointed out, the identity of the tort-feasor as the defendant's brakeman was prima facie established, first, by evidence that he was in the place where it was a brakeman's duty to be; second, by evidence that he was discharging a brakeman's duties; third, by evidence that he was dressed like a brakeman; and fourth, by evidence that he was seen a short time later in company with other members of the defendant's train crew. According to the standards of legal logic as controlled by the tests of every day experience these facts constituted adequate support for the inference that the tort-feasor was the defendant's servant. Therefore the court was justified on the state of the record in submitting the fact in issue to the jury. It is beyond reasonable probability that a mere stranger to the defendant's employ would at the time in question be standing where the alleged brakeman was standing, would be dressed as he was dressed, would take the interest that he took in evicting the boy from the defendant's train, and would with other members of the defendant's train crew walk back to where the injured boy was lying.

The appellant stresses the fact that although all of the train crew were in court at the time of the trial none of the boys could identify any of that crew as the stone-throwing "brakeman." This failure of identification was a fact to be weighed by the jury but it was not as a matter of law conclusive against plaintiff's case. It is a common experience for one person who sees another in a particular situation and dressed in a particular manner not to be able to identify that person when the latter is in a different situation and dressed differently. A brakeman garbed for duty and on a train would look quite different when dressed in ordinary raiment in a court room. Even the presence or absence of a hat makes a substantial difference in a person's appearance.

The appellant also argues that the plaintiffs' case is prima facie incredible in two particulars, (1), that the boy while standing on the outside ladder of a steel gondola car on the north side of a train moving east was struck in the *left* eye with a stone thrown by a man standing on a platform in the front of the following car, and (2), that in falling the boy landed on his side, free of the train, on the ballast between the two tracks, and bounced from there onto the rail on which the train was moving.

We find nothing inherently incredible in this testimony. If a boy was called to as this boy says he was he would naturally look in the direction whence the call came and if the "caller" was using menacing language as testified to, the boy would naturally continue to fix his gaze upon him and his eyes would thereby become targets for any missile thrown by that person.

Nor is there anything improbable or unusual in a boy after jumping or being thrown off a moving train rolling or rebounding back under the wheels of that train. The very act of hitting the ground suddenly would cause a recoiling or rebounding of the body. "To every action there is an equal and opposite reaction." The fact, as pointed out by appellant, that another boy who jumped

off the train just before the minor plaintiff was ejected, did not bounce back under the cars, does not in itself establish the falsity of the averment of the minor plaintiff's bounding back under the wheels. Two golf balls driven one after the other from the same tee by the same person who has the same intention as to each may reach widely different destinations. A boy jumping off a train, as the boy referred to did, would have a much better opportunity to keep himself from rolling or bounding back under the wheels than would a boy who fell off after being hit in the eye by a missile.

We still adhere to the principle cited by appellant and so often laid down by us that "Courts are not required to believe that which is contrary to human experience and the laws of nature or which they judicially know to be incredible" (Horen v. Davis, 274 Pa. 244; Folger v. Pittsburgh Rys. Co., 291 Pa. 205), but the judgment of the court below does not offend this principle. The evidence in support of plaintiff's claim was not so contrary to human experience and the laws of nature as to be judicially incredible.

The case was for the jury. The judgment is affirmed.