**UNITED STATES v. LEVY et al.**

No. 8225.

Circuit Court of Appeals, Seventh Circuit.

Nov. 3, 1943.

Rehearing Denied Dec. 2, 1943.

Eben Lesh and Joseph H. Lesh, both of Huntington, Ind., and Max Klezmer, of Indianapolis, Ind., for appellants.

B. Howard Caughran, Paul A. Pfister, and David F. Long, Asst. U. S. Atty., all of Indianapolis, Ind., for appellee.

Before SPARKS, MAJOR, and KERNER, Circuit Judges.

MAJOR, Circuit Judge.

This is an appeal from a judgment predicated upon a jury verdict finding appellants and others guilty of charges contained in a six count indictment. The first five counts charge a fraudulent scheme with the use of the United States mail in its execution, and count 6, a conspiracy to commit the fraud so charged. Ten individuals (including Simon L. Levy and Charles B. Levy, appellants), together with two corporations, Stoker Corporation of America and Nomis Corporation, were named as defendants. Six of the individual defendants were acquitted on a motion for directed verdict. Of those convicted, two of the individual defendants, as well as the two corporate defendants, have not appealed.

The substance of the alleged scheme is that the individual defendants, as officers, agents and employes of the two corporate defendants, organized two advertising agencies, namely Aprocs Advertising Agency and Lingle Advertising Agency, and planned to represent that said agencies acted as Sales Counselors in advertising the business of such corporations; that advertisements were inserted in numerous newspapers and publications using the address of said agencies but not disclosing the names thereof or the names of their alleged clients, representing that distributorships were available for one of America's greatest opportunities; that persons to be appointed as distributors had the opportunity of earning the sum of $20,000 per year; that such distributors could offer the world's greatest prefabricated houses at unusually low prices, which could be financed by and through the Federal Housing Administration; that such distributors would be afforded an opportunity for complete financial independence and would receive a big profit from the sale of Nomis houses. For the purpose of securing such distributors, so it is alleged, certain false statements were included in the advertisements as to the facilities, capital and ability of the corporate defendants to build sectional and prefabricated structures, and that employes employed by the unnamed clients of such advertising agencies were making

fabulous sums of money, and that one employe had earned over $10,000 in one month by the sale of such houses. Such advertisements, so it is alleged, were so worded as to lead the readers thereof to believe that the corporate defendants were the owners of and engaged in the operation of a factory in which such buildings were manufactured. As a part of the scheme, it is alleged that the name of the Nomis Corporation was to be printed and published in a publication known as "Thomas' Register of American Manufacturers," and that statements and affidavits were furnished to the publisher thereof to the effect that the Nomis Corporation owned assets and resources of the valuation of more than a million dollars. The purpose was to induce those whom it was intended to defraud to enter into written contracts with one or the other of the corporate defendants and deposit a sum of money in order to be named as distributors for said corporations in a certain designated territory. It is alleged that the defendants purposely interfered with and delayed the furnishing of houses to the distributors in conformity with such contract so as to discourage such distributors in the sale of houses. It is alleged that the representations by which the defendants obtained money from those appointed as distributors were known by the defendants to be false, and that they intended to convert such money to their own use and benefit.

The sole errors argued on this appeal are (1) the court's refusal to direct a verdict, and (2) the admission of certain evidence on behalf of the government and the refusal to admit certain evidence on behalf of the defendants.

Ordinarily, of course, on the trial court's refusal to direct a verdict, we are presented with the necessity of examining the evidence only to the extent of ascertaining if there is substantial evidence in support of the indictment. That is true in this case, but on account of the urgent insistence of defendants' counsel, both in brief and oral argument, that the evidence is not sufficient, we have studied it with more than ordinary care. In doing so, we have especially kept in mind the rule so heavily relied upon that a conviction cannot be sustained where the evidence is as consistent with innocence as with guilt. At the same time, we must recognize that we are not the trier of the facts and must not usurp the province of the jury in this

respect. The mere fact that we might entertain serious doubts as to the conclusion reached by the jury would afford no justification for holding that no jury question was presented.

We agree with the contention that much of the proof, even that offered by the government, is as consistent with defendants' good faith as with their intent to devise a scheme to defraud. This is especially true when it is considered that defendants were entitled to engage in a reasonable amount of what is sometimes termed as "puffing" or extolling the merits of their business and product. On the other hand, there are disclosed numerous misrepresentations of fact which we find difficult, if not impossible, to reconcile with defendants' honesty and good faith. It perhaps would serve no good purpose and certainly would be impractical to enter a detailed discussion of the voluminous testimony covering some 400 pages of the printed transcript of record. We shall attempt, therefore, only briefly to relate the more important facts of the case.[1]

The defendant Nomis Corporation of Lafayette, Indiana, was incorporated by the defendant Simon L. Levy in 1934, and he thereafter was the owner of substantially all the capital stock and served as its president and business manager. This corporation engaged in the wholesaling of oil burners, heating, ventilating and air conditioning systems. In the summer of 1939, the Nomis Corporation decided to engage in the wholesaling of prefabricated and ready-cut houses. The Stoker Corporation of America was organized by the defendant Charles B. Levy in 1938, and engaged in the distribution of various kinds of merchandise. In 1939, Charles B. Levy associated himself with Simon L. Levy in the business of selling prefabricated and ready-cut houses and other buildings under the name of Nomis Corporation and Stoker Corporation.

As we understand, these defendants, neither in their individual nor corporate capacity, had any facilities or any intention of engaging in the manufacture of houses. However, contracts were made with the Illinois Lumber Yards at Cairo, Illinois (a Sears, Roebuck owned company), Gordon-Van Tine Company of Davenport, Iowa, the Udell Company of Indianapolis, Indiana, the Houston Ready-Cut Houses Company of Houston, Texas, and the Bennett Lumber Corporation of North Tonawanda, New York, for the purpose of obtaining houses and other supplies as ordered. Two advertising agencies were organized by the defendants, the Aprocs Advertising Agency for the Stoker Corporation and the Lingle Advertising Agency for the Nomis Corporation. It was through advertisements inserted in newspapers all over the country by these advertising agencies that persons were induced to come to Indianapolis for the purpose of obtaining a distributorship. The advertisements portrayed an opportunity to make $20,000 a year selling prefabricated houses. When the prospect arrived in Indianapolis, he was usually handled by certain key men representing the defendants. Five hundred dollars was the regular deposit required on a contract, but in some instances a lesser amount was accepted. Oftentimes the checks received for such deposits were mailed direct to the maker's bank and the check paid before the maker had returned to his home. Most of the correspondence was signed by A. McCarty, a woman who was instructed by defendants to practice the signing of her name so as to make it appear to be that of a man. On some occasions, prospects calling at defendants' office and inquiring for A. McCarty were told that "he" was out of the city.

Perhaps the most flagrant misrepresentation connected with the alleged scheme was the means employed by defendants to obtain an improved rating in Thomas' Register of American Manufacturers, which was an annual publication containing a list of industrial concerns doing business in the United States. In order to obtain such improved rating, the defendant Simon L. Levy on November 3, 1939, made an affidavit "that there is over two million dollars

---

[1] In this respect, we regret to state that we have received very little assistance from the government's brief. Apparently no attempt was made to comply with rule 16(7) of the rules of this court. Without stating whether defendants' statement of facts is controverted and without any effort to present a "concise statement of the facts" relied upon by the government, the brief devotes 55 pages to a synopsis of the testimony of 33 witnesses. It would have been only a little less helpful to have referred us to the record for a statement of facts. That we are overlooking the government's failure to comply with the rule in this case does not mean that we are likely to do so in the future.

in cash resources used in and behind the manufacturing of Nomis houses." About the same time and accompanying the order for space in the Register, the same defendant made the following statement in writing: "Our plant, stock in hand, good accounts due us, real estate, cash on hand and in bank, and other assets of the nature of the foregoing represent a reasonable value of over one million dollars resources." As a result of such representations, the Nomis Corporation which theretofore had had an "A" rating was changed to an "AAAA" rating, the highest attainable and one which was accorded such corporations as Standard Oil of New Jersey and General Motors Corporation. Such representations were plainly false, and while we find nothing in the record which discloses the exact assets of Nomis, it is readily ascertainable that they were infinitesimal as compared with the representations made.

It is argued that the representation as to the assets and resources of Nomis included those of the corporations with whom they had contracts to furnish houses and that the representative of Thomas' Register so understood. It is inconceivable, however, that the Thomas agency was or could have been interested in the assets or resources of these other corporations in determining the rating to be accorded Nomis. The deceitful purpose of obtaining th : high rating is disclosed by a statement 1. a letter to an attorney representing a dissatisfied distributor. In such letter, signed by defendant Charles B. Levy, it is stated, "Our original contract for the supply of houses was with the Nomis Corporation of Lafayette, Indiana, whom you will find rated one million dollars in the Thomas Directory of Manufacturers." The manner in which this high rating was obtained is relied upon by the government as an important element of the scheme to defraud, and we agree that it presents a serious challenge to the good faith and honest purpose of the defendants.

In one instance, it was represented to a person who subsequently deposited his money and secured a distributorship that "a man named Williams, selling just such equipment, told us he had increased his earnings so greatly that during his best month he actually earned over $10,000." It is claimed by the defendants that this was not a representation that Williams had earned such sum in the sale of Nomis products. Literally speaking, this may be true, but it was obviously intended as such.

Moreover, Williams, who had been engaged on his own in the prefabricated house business, not only denied that he had made such a statement but also denied that he had ever made such a sum in a month. He also testified that the defendant Charles B. Levy endeavored to obtain from him a written statement as to his earnings, which he refused to make because it was not true.

There was also proof of representations to the effect that a number of defendants' houses had been sold and erected in Indianapolis, Louisville, Toledo, and perhaps other places. Such representations, in the main, were shown to be false and must have been made for the purpose of inducing those to whom made to become distributors.

Many witnesses testified that it was represented to them that they would be able to meet all competition, but upon investigation they found that such was not the case and for this reason they were not able to make sales. We agree with defendants that much of this testimony is of doubtful probative value, but taken as a whole it points rather convincingly to the fact that defendants' representations in this respect were not made in good faith. It is significant in this connection to note that although about 130 distributors were appointed, only 13 Nomis houses were sold by such distributors.

■ Without further discussion of the facts, we are of the view that a jury question was presented and that there was no error in the court's refusal to direct a verdict.

■ We also are not impressed with the argument that the court committed reversible error in the admission and rejection of evidence. We shall briefly refer to the points argued in this respect. A witness was permitted to testify as to his interpretation of a letter received from the defendants. We think this testimony should have been refused, as the letter was in evidence and the jury was no doubt as well qualified to interpret its meaning as the recipient. We are of the view, however, that defendants could not have been harmed by its admission. It is asserted that the court erred in refusing to permit a witness to testify that defendants' method and process of distribution was an efficient, proper and practical method. An answer to this question would merely have been an expression of the witness' opinion and if material, which we doubt, would have invaded the province of

the jury. Complaint is made of the court's refusal to permit the defendant Simon L. Levy to testify that salesmen employed by him had earned as much as $12,000 in one month in selling merchandise under the plan alleged in the indictment. As the trial court pointed out, the proposed testimony related to earnings in a line of business other than that alleged in the indictment, even though it did embrace the same general plan. We think the answer was properly excluded.

■ A witness who apparently qualified as an expert, or at any rate who was familiar with various sales and distribution methods employed by manufacturing concerns, was asked: "Will you explain to the jury the usual and customary features of such plans of distribution in use in the United States today?" The court's refusal to permit an answer to this question is complained of, but we fail to see how it would have thrown any light upon the issues involved. It would have opened up a discussion which might have been carried on at great length, without bearing upon defendants' intent and purpose in the operation of the condoned plan. Likewise, we think it was not error to exclude evidence that defendants' advertising through the Lingle and Aprocs agencies was similar to that used by other sales agencies in the United States. The question of guilt or innocence must turn upon the intent or purpose which the defendants had in mind in adopting the plan by which they sought to obtain money from those appointed as distributors. The manner of advertising was merely one of the steps in such plan. The fact that such method of advertising might have been in general use would not, in our opinion, prove or tend to prove the intent with which it was used by defendants.

■ It is also contended that the court erred in refusing to permit the witness Roginson to answer the following question: "Did you, in the regular course of business, receive letters from purchasers of houses, your houses or Nomis houses, or through the Stoker Corporation of America, expressing satisfaction and praise of the houses they had bought?" It is argued that this question is proper under the authority of Hair v. United States, 7 Cir., 240 F. 333 and Harrison v. United States, 6 Cir., 200 F. 662. It is true the court in those cases held that letters received by the defendant complimenting defendant's product were admissible as bearing upon the defendant's good faith, the government having offered testimony that defendant's product was of an inferior quality. In the instant case, however, the witness was not a defendant but was president of the Bennett Lumber Corporation. His sole connection with the defendants was that his company had made a contract with them by which it agreed to sell houses on their order. The fact that purchasers of Nomis houses were satisfied with their quality, price, etc. perhaps would be admissible—in fact, there is some testimony of this character in the record—but we do not think it would be proper to make such proof in the indirect method called for by this question. It could amount to nothing more than hearsay, and we think it was inadmissible.

As already stated, we have made a careful study of this record. In doing so, we have read the lengthy charge given by the court to the jury, although no criticism is made of such charge. The jury was carefully and fully instructed as to the law applicable to the case, and the instructions were as favorable to defendants' contentions as they had any right to expect. We are convinced from the entire record that the defendants had a fair and impartial trial and that their case was properly submitted to the jury.

The judgment is, therefore, affirmed.