## CATES v. HADERLEIN.
### No. 10312.

United States Court of Appeals
Seventh Circuit.
May 23, 1951.

Frank E. Gettleman, Arthur Gettleman and Edward Brodkey, all of Chicago, Ill., for appellant.

Otto Kerner, Jr., U. S. Atty., John Peter Lulinski and C. Wylie Allen, Assts. U. S. Atty., all of Chicago, Ill., for appellee.

Before DUFFY, FINNEGAN and LINDLEY, Circuit Judges.

DUFFY, Circuit Judge.

In this action plaintiff seeks to restrain and enjoin the postmaster of the city of Chicago from carrying out the terms of a Fraud Order issued by the Postmaster General after a hearing. The district court denied the plaintiff's motions for a preliminary injunction and for a permanent injunction, and dismissed the complaint.

In the complaint herein plaintiff described in detail the administrative procedure of the Post Office Department with reference to the hearing before that agency which led to the issuance of the Fraud Order. Appellant, trading as Glory Bee Products and Glory Bee, was charged with conducting a scheme for obtaining money through the mails by means of pretenses which were knowingly false and fraudulent, in violation of Secs. 259 and 732, Title 39 U.S.C.A. Appellant advertised its products, "Glory Bee Fast Luck Brand Incense" and "Incense Number Tablets," by sending printed circulars through the mails.

In answer to the complaint filed in the proceedings before the Post Office Department, appellant admitted that he had, in order to sell his products, caused to be printed and disseminated through the mails the circulars referred to, but he denied that

the import of such advertising was as stated in said complaint, and also denied that any false or fraudulent representations had been made. On the hearing before the trial examiner, the government offered the testimony of a post office inspector and a medical officer of the Federal Food and Drug Administration. Appellant herein did not offer any testimony. The trial examiner, after the hearing, made findings of fact and recommendations to the Postmaster General for the issuance of a fraud order. On August 16, 1950, the Postmaster General issued the Fraud Order.

Appellant contends that before a valid fraud order may be issued the Postmaster General and the Post Office Department must subject themselves to the provisions and requirements of the Administrative Procedure Act of 1946, 5 U.S.C.A. § 1001 et seq., and grant a fair hearing, as required by Sec. 5(c) of that act.

The terms of the statutes under which the Fraud Order here under consideration was issued,[1] make no provision for a hearing in connection with the issuance of fraud orders, but provide, "The Postmaster General may, upon evidence satisfactory to him", issue such orders. After it was held in American School of Magnetic Healing v. McAnnulty, 187 U.S. 94, 23 S.Ct. 33, 47 L.Ed. 90, that a court review could be had to test the validity of such fraud orders, the constitutionality of the sections authorizing their issuance was upheld in Public Clearing House v. Coyne, 194 U.S. 497, 24 S.Ct. 789, 48 L.Ed. 1092, and Donaldson v. Read Magazine, 333 U.S. 178, 68 S.Ct. 591, 92 L.Ed. 628.

Despite these rulings, appellant contends that the Fraud Order here involved is void for failure on the part of the Postmaster General to comply with the Administrative Procedure Act. Appellant specifically relies on the language of Sec. 5, as follows:

"In every case of adjudication required by statute to be determined on the record after opportunity for an agency hearing, * * *

* * * * * *

"(c) The same officers who preside at the reception of evidence pursuant to section 7 shall make the recommended decision * * * no such officer shall consult any person or party on any fact in issue unless upon notice and opportunity for all parties to participate; nor shall such officer be responsible to or subject to the supervision or direction of any officer, employee, or agent engaged in the performance of investigative or prosecuting functions for any agency. No officer, employee, or agent engaged in the performance of investigative or prosecuting functions for any agency in any case shall, in that or a factually related case, participate or advise in the decision, recommended decision, or agency review pursuant to section 8 except as witness or counsel in public proceedings. * * *"

We think that by its very terms the Administrative Procedure Act, applying as it does to cases "of adjudication required by statute to be determined on the record

---

1. 39 U.S.C.A. § 259 provides in part: "The Postmaster General may, upon evidence satisfactory to him * * * that any person or company is conducting any * * * scheme or device for obtaining money or property of any kind through the mails by means of false or fraudulent pretenses, representations, or promises, instruct postmasters at any post office at which registered letters or any other letters or mail matter arrive directed to any such person or company * * * to return all such mail matter to the postmaster at the office at which it was originally mailed, with the word 'Fraudulent' plainly written or stamped upon the outside thereof; and all such mail matter so returned to such postmasters shall be by them returned to the writers thereof, under such regulations as the Postmaster General may prescribe. * * *"

39 U.S.C.A. § 732 provides in part: "The Postmaster General may, upon evidence satisfactory to him that * * * any person or company is conducting any * * * scheme for obtaining money or property of any kind through the mails by means of false or fraudulent pretenses, representations, or promises, forbid the payment by any postmaster to said person or company of any postal money orders drawn to his or its order * * * and may provide by regulation for the return to the remitters of the sums named in such money orders."

after opportunity for an agency hearing," is inapplicable to a mail fraud order issued under 39 U.S.C.A. §§ 259 and 732, since those statutes contain no requirement for hearing or opportunity therefor.

The legislative history of the Administrative Procedure Act generally, or in connection with the provisions of Sec. 5, will not be referred to as it has been held to be "more conflicting than the text is ambiguous." Wong Yang Sung v. McGrath, 339 U.S. 33, 49, 70 S.Ct. 445, 14 L.Ed. 616. In that case, however, it was ruled, 339 U.S. at page 50, 70 S.Ct. at page 454: "We think that the limitation to hearings 'required by statute' in § 5 of the Administrative Procedure Act exempts from that section's application only those hearings which administrative agencies may hold by regulation, rule, custom, or special dispensation; not those held by compulsion. We do not think the limiting words render the Administrative Procedure Act inapplicable to hearings, the requirement for which has been read into a statute by the Court in order to save the statute from invalidity. * * *"

This is a definite and decisive construction of the statute rendering the Administrative Procedure Act inapplicable to the Fraud Order in question because, first, no hearing is required under 39 U.S.C.A. §§ 259 and 732, and, second, these statutes are constitutionally valid without any hearing requirement having been read into them.

On this point, it was similarly concluded in Bersoff v. Donaldson, 84 U.S.App.D.C. 226, 174 F.2d 494, 495, viz.: "* * * In our opinion these provisions of the Act do not apply to mail fraud orders as Section 5, 5 U.S.C.A. § 1004, thereof confines the prescribed procedure to cases of adjudication 'required by statute to be determined on the record after opportunity for an agency hearing.' The fraud order statutes do not in terms require a hearing. Therefore, we think, they do not come within the scope of the procedural provisions of the Administrative Procedure Act. * * *"

It is clear that the contention of appellant that the Administrative Procedure Act should have been applied and followed in the issuance of the Fraud Order involved is without merit.

As to the merits, appellant contends that there was nothing inherently fraudulent in his business of selling incense, concerning which he says there is an old and respectable superstition concerning good luck. He further points out that in various places in his circulars and advertising he used such explanations as, "Remember we sell our incense only for what it actually is. We absolutely make no supernatural claims for our products," and in the opening paragraph of the circular letter sent out by appellant he stated, "Note, I don't claim any supernatural powers in luck." Likewise some of appellant's advertisements contained a promise that if the purchaser were not delighted and completely satisfied, the purchase price of the product would be refunded.

"Fast Luck Brand Incense" consisted of an aromatic oil and coloring in a sawdust base. The incense itself was no different than ordinary commercial incense. With each pound of Fast Luck Brand Incense appellant included as a "special gift" a package of "Number Tablets," which tablets were composed of an aromatic oil in a charcoal base, containing numbers made of ink saturated with copper sulphate. These numbers made their appearance in the burning incense when the tablets were lighted. The incense, lucky numbers, and the container were sold for $5.

The senior trial examiner, after a hearing, made findings which were approved and adopted by the Solicitor, and later adopted by the Postmaster General. The record discloses that the findings are supported by substantial evidence. Appellant went much further in his advertisements and circulars than to offer his incense, as he contends, for what it was, that is, ordinary commercial incense. His sales efforts were predicated upon the use of his incense as a luck-changing medium. His advertisements were designed to prey upon the superstitious beliefs of ignorant people.

As an example of the kind of advertisement used by appellant in Grier's Almanac for the States of North Carolina, South Carolina, Georgia, Florida, Alabama, Mississippi, Tennessee, Louisiana, Texas, and Arkansas, the following heading appeared

in large black type: "Don't Give Up! Luck May Change For You Into Power and Glory!" Small print followed, reading: "Read very carefully—then decide! How you may find Good Fortune, Happiness, according to legend, same as I found it. I was real down—so blue, confused, just couldn't think what to do. Then I learned how Incense could soothe and calm—how it relax me—help me meditate what to do. It seemed like magic the way things got. I want you to know the amazing calming power of this Incense that helped me so much. * * *"

Numerous testimonials were printed in some of the circulars. Appellant referred to them in his advertisements as "personal excerpts from users of Glory Bee Fast Luck Brand Incense (containing) their sincere, heartfelt emotions of thankfulness." These testimonials purported to attribute to the use of appellant's incense such results as better health, improved financial conditions, "power" to meet family obligations, wonderful changes for the better in the family home, the obtaining of profitable employment, improved social power, peace in the home, and acquisition of new "pep." The lucky number tablets also were credited with bringing luck, cheer and good fortune to the user. The incense was described in other advertisements as "amazing." In addition to the foregoing statements, the findings contained the following: "Thus, this respondent (appellant here) by these advertising devices vouches through his advertising literature for the validity of the 'legend' and endorses it as worthy of belief. He misleads his superstitious readers to believe that the 'legend' is reality, and offers for sale the instrumentalities by means of which he shows this has been and can be accomplished. * * * He has composed advertisements well calculated to deceive and defraud the ignorant, the credulous and the superstitious." The Postmaster General concluded that such statements materially misrepresented the value of appellant's incense, its efficacy, and the benefits to be derived from the use thereof, and that from evidence satisfactory to him that appellant was engaged in conducting a scheme or device for obtaining money through the mails by means of false and fraudulent pretenses, representations and promises, in violation of Secs. 259 and 732, Title 39 U.S.C.A.

The finding that appellant engaged in conducting a scheme for obtaining money through the mails by means of false and fraudulent pretenses, representations and promises is a finding of fact, which by statute is committed to the Postmaster General and will not be reviewed by the courts when it is fairly arrived at and has substantial evidence to support it so that it cannot justly be said to be palpably wrong and arbitrary. Leach v. Carlile, 258 U.S. 138, 139, 42 S.Ct. 227, 66 L.Ed. 511. The buying public does not ordinarily carefully study or weigh each word in an advertisement and the ultimate impression upon the mind of the reader arises not only from what is said but also all of that which is reasonably implied. Aronberg v. Federal Trade Commission, 7 Cir., 132 F.2d 165, 167. The important criterion is the net impression which the advertisement is likely to make upon the purchasers to whom the advertisement is directed. Charles of the Ritz Distributors Corp. v. Federal Trade Commission, 2 Cir., 143 F.2d 676, 680. It has been held that even if an advertisement is so worded as not to make an express misrepresentation, nevertheless if it is artfully designed to mislead those responding to it, the mail fraud statutes are applicable. Durland v. United States, 161 U.S. 306, 313, 16 S.Ct. 508, 40 L.Ed. 709; McCarthy v. United States, 2 Cir., 187 F. 117.

What the Supreme Court said in Donaldson v. Read Magazine, supra, 333 U.S. at page 189, 68 S.Ct. at page 597, is applicable to the case at bar: " * * * That exceptionally acute and sophisticated readers might have been able by penetrating analysis to have deciphered the true nature of the contest's terms is not sufficient to bar findings of fraud by a fact-finding tribunal. Questions of fraud may be determined in the light of the effect advertisements would most probably produce on ordinary minds. Durland v. United States, 161 U.S. 306–313, 314, 16 S.Ct. 508–511, 512, 40 L.Ed. 709; Wiser v. Lawler, supra, 189 U.S. at

374

page 264, 23 S.Ct. [624] at page 626, 47 L. Ed. 802; Oesting v. United States, 9 Cir., 234 F. 304, 307. People have a right to assume that fraudulent advertising traps will not be laid to ensnare them. 'Laws are made to protect the trusting as well as the suspicious.' Federal Trade Comm. v. Standard Education Society, 302 U.S. 112, 116, 58 S.Ct. 113, 115, 82 L.Ed. 141."

The administrative determination of whether the representations made by appellant left readers with a false impression is to be accepted if there is a rational basis for such conclusion. Mississippi Valley Barge Line Co. v. United States, 292 U.S. 282, 286–287, 54 S.Ct. 692, 78 L. Ed. 1260; Rochester Telephone Corp. v. United States, 307 U.S. 125, 146, 59 S.Ct. 754, 83 L.Ed. 1147. As the findings of the Postmaster General are supported by substantial evidence and as we find nothing arbitrary or palpably wrong in his conclusions, the district court correctly denied the motion for a permanent injunction and dismissed the complaint. The judgment is

Affirmed.