G. J. HOWARD CO. (George J. Howard, doing business as G. J. Howard Co.) Plaintiff,

v.

Francis J. CASSIDY, Postmaster, Flushing, New York, Defendant.

Civ. No. 18604.

United States District Court
E. D. New York.

May 22, 1958.

Dammann, Roche & Goldberg, New York City, for plaintiff. Allen Blank, New York City, of counsel.

Cornelius W. Wickersham, Jr., U. S. Atty., Brooklyn, N. Y., for defendant. Lawrence G. Nusbaum, Jr., Asst. U. S. Atty., Brooklyn, N. Y., of counsel.

ZAVATT, District Judge.

Upon the request of both parties communicated to the Court during oral argument, plaintiff's motion for a temporary injunction is to be treated as a motion for summary judgment. This is an action seeking to enjoin enforcement of a fraud order signed by the Acting General Counsel of the Post Office Department which directed the defendant to return mail addressed to the plaintiff, which was not demonstrably unrelated to the enterprise here involved, to the senders thereof marked "Fraudulent"; and which directed that postal money orders payable to the plaintiff's order be returned to the remitters. Both parties agree that there are no triable issues of fact and that either one or the other is

entitled to summary judgment as a matter of law.

The subject matter of the order is an advertisement which is as follows:

"See your tummy vanish before your eyes with Franziska of Hollywood's

MAGIC BUTTON*

an astonishing reducing device!

Do you realize that while you go about your daily chores you can be erasing unbecoming inches from your abdomen, your waist, your hips? You can be permanently eliminating the necessity of wearing confining girdles and corsets? Franziska of Hollywood has invented a wonderful device that does this for you . . . while you work, while you play, while you relax in the evening.

too much TUMMY?

Press the 'Magic Button' . . .

see inches disappear instantly

Follow the same instructions that this famous figure expert gives movie stars . . . and you, too, may know the perhaps long-forgotten joy of a slim and shapely midriff—without an embarrassing surplus of tummy or the restricting garments that 'hold it in.' It's easy —fun! No strenuous exercise, no diet, no drugs.

Included with the 'Magic Button' —'10 days to Figure Beauty' Illustrated manual shows you what to do every day for 10 days. At the end of this period your awkward tummy line is gone—OR YOUR MONEY BACK, $4.98 ppd.

. . . *Trademark (c) 1957 . . .

G. J. Howard Co., Dept. J-27, Flushing 52, N. Y.

Please rush the 'MAGIC BUTTON' and Franziska of Hollywood's '10 Days to Figure Beauty.' My check or m. o. for $4.98 is enclosed. If

FREE
10-DAY
TRIAL

I do not see pleasing results in 10 days, I will return the 'MAGIC BUTTON' for full refund.

Miss
Mrs. ——————————————
Street ——————————————
City —————— Zone —— State ———
. . . . . . . . . . . . . . . . . . . . . . . . . . . . . ." .

The fraud order was issued following a proceeding before the Post Office Department which was commenced upon a complaint filed by the Assistant General Counsel in charge of the Fraud Division of the Post Office, which charged that the plaintiff was conducting a fraudulent scheme in violation of Title 39 U.S.C.A. §§ 259 and 732. It was alleged that the plaintiff was and had been obtaining remittances of money through the mails for the "Magic Button" device by means of false and fraudulent pretenses, representations and promises. It was alleged further that the plaintiff represented to the public in substance and effect:

"a. That 'too much TUMMY', that is to say, excess fat in the stomach area, will 'vanish before your eyes' by use of 'Magic Button an astonishing reducing device';

"b. That any woman who has 'too much tummy' and uses the said 'Magic Button' as directed will see 'inches disappear instantly';

"c. That any person who has 'unbecoming inches' on the 'abdomen', 'waist' or 'hips' can erase them by use of the said 'Magic Button' as directed;

"d. That the said 'Magic Button' when used as directed will permanently eliminate 'the necessity of wearing confining girdles and corsets' by those who have 'an embarrassing surplus of tummy';

"e. That any woman who has unbecoming inches around her abdomen, waist, or hips will by the use of the said 'Magic Button' know 'the long-forgotten joy of a slim and shapely midriff—without an embarrassing surplus of tummy or the re-

stricting garments that "hold it in" ' ";

and that such statements are false and fraudulent and materially and substantially misrepresent the value and efficacy of the "Magic Button" device to accomplish the aforesaid results. The plaintiff answered this complaint, denying a fraudulent scheme in violation of the statute, and denying that he had received remittances through the mails under false and fraudulent pretenses, representations or promises. On July 8, 1957 a hearing was held in Washington, D. C., at which the Post Office Department and plaintiff were represented by counsel, given an opportunity to participate, examine and cross-examine witnesses, and to introduce relevant and competent evidence. After the hearing proposed findings of fact and conclusions of law were submitted by both sides, whereupon an initial decision was rendered by the Post Office Department Hearing Examiner.

Although the device itself was not submitted to the Court, it was in evidence before the Examiner, who found that it is a harness made of elastic webbing about two inches wide which fits around the abdomen and the thighs in such a way as to place and keep on the wearer's navel the white button attached to the device, from which it gets its name. A pamphlet entitled "10 Days to Figure Beauty with Franziska of Hollywood's 'Magic Button'" accompanied the test purchase made by the Post Office Department. The pamphlet explains and illustrates with pictures posture exercises initiated by pressing the "Magic Button inward and downward as if pushing the abdomen back toward the pelvis". The plaintiff concedes that the "Magic Button" device is not a weight-reducer. It is admittedly a posture aid device, which it is claimed will, if used as directed, produce a posture which will reduce the waist line measurement as distinguished from weight reduction. The Hearing Examiner found that the advertisement "can reasonably be and is meant to be interpreted as a weight reduction scheme". He found the advertisement to be an appeal to weight conscious people representing that its product or device will aid them in reducing their weight, and further that the advertisement was composed or purposefully printed in such a way as to mislead. The Examiner concluded that the plaintiff was and had been obtaining remittances of money through the mails for the "Magic Button" device by means of false and fraudulent pretenses, representations and promises in violation of 39 U.S.C.A. §§ 259 and 732. An appeal was taken to the General Counsel of the Post Office Department, who, in a decision dated March 24, 1958, affirmed the findings of the Hearing Examiner and directed that the fraud order in question issue.

■■ The evidence, when viewed in a light most favorable to the plaintiff, reveals that the efficacy of the "Magic Button" device is as testified to by Dr. James A. Gannon, an expert witness on behalf of the plaintiff. It was his testimony that the exercises prescribed for use with the "Magic Button" were based upon posture improving régimes used in most orthopedic clinics, and employed by orthopedic specialists; that if followed intelligently and faithfully the exercises will improve muscle tone, and that this will have the effect of reducing the waistline measurement. Dr. Gannon testified that although the exercises could be done just as easily without the device, the "Magic Button" was effective as a symbol and a reminder to the user to hold himself in a prescribed position. Concerning the benefits of the device, he stated that through the exercises to be done therewith the need for wearing girdles and confining devices could be permanently eliminated in many cases, and that if "excess tummy" was due to poor posture or muscle tone he would prescribe the use of the device and exercises. No more than this is claimed for the "Magic Button" by the plaintiff, for as previously stated, it is specifically conceded that the "Magic Button" is not a weight reducer.

On the other hand, it is clearly the representation implicit in the plaintiff's advertisement that what is offered is a

weight reducing device, and the Post Office Department was correct in so finding. Of course, it is only necessary that the Court determine whether there is sufficient evidence to support the Post Office Department's findings of fraud, Donaldson v. Read Magazine, 1948, 333 U.S. 178, 68 S.Ct. 591, 92 L.Ed. 628, but were this a proceeding *de novo* I would reach the same conclusion. In any event, it cannot be stated that the administrative determination of fact was not fairly arrived at, nor that it lacks substantial evidence to support it so that it is palpably wrong or arbitrary. Leach v. Carlile, 1922, 258 U.S. 138, 42 S.Ct. 227, 66 L.Ed. 511.

People have a right to assume that fraudulent advertising traps will not be laid to ensnare them, and questions of fraud are to be determined in the light of the effect advertisements would most probably produce on ordinary minds. Donaldson v. Read Magazine, supra; see Gottlieb v. Schaffer, D.C.S.D. N.Y.1956, 141 F.Supp. 7. To the ordinary mind the claims for the "Magic Button" that it is "an astonishing reducing device" which permits the "erasing" of "unbecoming inches from your abdomen, your waist, your hips"; which eliminates "the necessity of wearing confining girdles and corsets"; and which requires "no strenuous exercise, no diet, no drugs", clearly import a product which will aid the purchaser with a weight problem. It is extremely unrealistic to believe that an ordinary person would send for the "Magic Button" believing that that which she is ordering is a device which will stimulate the taking of a course in posture improvement which is set forth in an accompanying pamphlet. The plaintiff's claim that there is no express misrepresentation in the advertisement is ill grounded. It is the net impression which the advertisement is likely to make upon purchasers to whom it is directed which is important, and even if an advertisement is so worded as not to make an express misrepresentation, if it is artfully designed to mislead those responding to it the mail

fraud statutes are applicable. Cates v. Haderlein, 7 Cir., 1951, 189 F.2d 369, 373, reversed on other grounds 1951, 342 U.S. 804, 72 S.Ct. 47, 96 L.Ed. 609. Finally, the omission from the advertisement of an indication that what is being sold is a posture improvement device further served to divert a purchaser's attention from the true nature of the product being sold, and there is in this failure to state what should have been stated an additional element of misrepresentation. Donaldson v. Read Magazine, supra.

To constitute a violation of the mail fraud statutes the false representations herein must have been made with intent to deceive. Reilly v. Pinkus, 1949, 338 U.S. 269, 70 S.Ct. 110, 94 L.Ed. 63. An intent to deceive may be established by circumstantial evidence, Gottlieb v. Schaffer, supra, and the record adequately supports the administrative finding of such an intent on the part of the plaintiff. The plaintiff's inability to testify as to why the purpose of the "Magic Button" was not mentioned in his advertising, and his awareness of the weight reducing implications of the advertising, brought out in the evidence, when considered with his admission that the "Magic Button" and exercises to be done therewith will not reduce weight, lead to the conclusion that the plaintiff deliberately and materially misrepresented the purposes and efficacy of his product, thereby committing a fraud upon purchasers thereof. The plaintiff contends that the refund guarantee contained in the advertisement is in and of itself sufficient to refute the claim that a purpose or intent to deceive existed. Such a guarantee does not necessarily disprove an intent to defraud, Harris v. Rosenberger, 8 Cir., 1906, 145 F. 449, 455, 13 L.R.A.,N.S., 762, certiorari denied 1906, 203 U.S. 591, 27 S.Ct. 778, 51 L.Ed. 331; Farley v. Heininger, 1939, 70 App.D.C. 200, 105 F.2d 79, 84, certiorari denied 1939, 308 U.S. 587, 60 S.Ct. 110, 84 L.Ed. 491; and Jeffries v. Olesen, D.C.S.D.Cal.1954, 121 F.Supp. 463, relied upon by plaintiff, does not hold to the contrary, for there the guarantee was regarded as merely evi-

dencing a lack of fraudulent purpose. In the instant case it was correct for the Post Office Department to find that the plaintiff could not "erase the illegal taint of its conduct by its 'money back' guarantee". As stated in G. J. Howard Co. v. Cassidy, D.C.E.D.N.Y.1957, 157 F.Supp. 297, 299, a proceeding in which the plaintiff was before this Court in a similar matter, and in which there was also present a "money-back" guarantee, the misrepresentation "is so patent as to speak for itself as an intent to deceive".

At the hearing before the Examiner on July 8, 1957, Dr. Kenneth D. Campbell testified as an expert witness on behalf of the Post Office Department. At the time of his testimony he was an Associate Medical Director of the Drug and Device Branch of the Food and Drug Administration. Part of the duties of this Branch is to review matters brought to its attention by Postal Inspectors to determine whether or not claims advanced for a particular article are justified in the light of medical opinion. In this connection the "Magic Button" was submitted to him, although no tests thereof were made. Dr. Campbell testified that the basis of reducing weight is a low caloric diet, the objective being to metabolize stores of body fat in order to meet an induced caloric deficiency, while at the same time re-educating a patient's dietary pattern so that excess eating will be curtailed. He stated that exercise alone was not an effective means for reducing excess weight. This testimony was not contradicted by the plaintiff's expert witness. The balance of Dr. Campbell's testimony was as to the uselessness of the "Magic Button" as a weight reducing device, and a literal refutation of the claims made for the "Magic Button" in the advertisement in terms of weight reduction. He answered affirmatively when asked by plaintiff's attorney whether all that he was prepared to say was that the device would not be effective to reduce weight.

Dr. Campbell testified that he had previously submitted a written report to the Post Office Department consisting of a medical evaluation of the effects exercise and the use of the "Magic Button" would have on the removal of fatty tissue from the abdomen. The plaintiff's attorney asked to see a copy of this report, the contents of which the Doctor stated he could not recall, and the Post Office Department, while not claiming privilege, refused to accede to this request. The plaintiff's attorney then stated that unless he could see the report he had been deprived of the right to properly cross-examine the witness. The Hearing Examiner denied the plaintiff's motion to direct the Post Office Department to turn over the report. The plaintiff raised this point on the appeal of the Hearing Examiner's initial decision to the General Counsel of the Post Office Department. In his opinion the Acting General Counsel distinguished Communist Party of United States of America v. Subversive Activities Control Board, D.C.Cir., 254 F.2d 314, on the ground that in the Communist Party case the witness was testifying about events with which she was connected, whereas in the instant case the witness was testifying as to his medical opinion of the "Magic Button".

In the Communist Party case the court held "that, where the Government places on the stand [before the Subversive Activities Control Board] a witness who testifies about an event long past, and it is shown that this witness at or about the time of the event made a written report to the Government concerning that event, and the testimony is material, and the credibility of the witness in her testimony upon this precise point is attacked, the Government upon demand must produce the report made by the witness. We think simple justice, the fundamentals of fair play, require no less". In the instant case there was no attack upon the credibility of Dr. Campbell so far as his testimony concerning the efficacy of the "Magic Button" as a weight reducer was concerned. To be sure, upon the completion of Dr. Campbell's direct testimony plaintiff's counsel moved that it be stricken as immaterial upon the ground that the plaintiff's advertisement does not

hold out the "Magic Button" to be a weight reducing devise. Under these circumstances I do not see how the plaintiff could have been prejudiced before the Hearing Examiner through its failure to inspect Dr. Campbell's report, and it is, in any event, unnecessary to determine whether there was error in the refusal to direct its production. The plaintiff having conceded that the "Magic Button" is not a weight reducing device, the administrative determination could have been sustained in the absence of any testimony by Dr. Campbell.

■ Despite the fact that I regard as correct the conclusion that there was present here a scheme for obtaining . money through the mails by means of false pretenses and with intent to defraud, I am forced by the decision of the Court of Appeals for this Circuit in Columbia Research Corp. v. Schaffer, 256 F.2d 677, to hold that the Post Office Department's order was unlawful because the regulations under which the order was obtained violate the Administrative Procedure Act, 5 U.S.C.A. § 1001 et seq., and that it is proper to enter summary judgment for the plaintiff. In the Columbia Research case, a proceeding similar to that in the instant case was instituted pursuant to §§ 201.01 to 201.27 of Title 39, Code of Federal Regulations. It was prosecuted by the Assistant General Counsel of the Fraud Division of the Post Office Department. The final decision of the Post Office Department was made by its General Counsel. The regulations governing the proceeding do not spell out the relationship between the Assistant General Counsel and the General Counsel, that is, between the prosecuting officer and the deciding officer. The Court of Appeals held that to that extent the regulations violate § 1002(a) (1) and (2) of the Administrative Procedure Act. The court held "that any such relation, to be valid at all, must be spelled out and published as a regulation, in order that third persons who must comply with orders of the 'agency' may know what they must meet: that is, it must be possible to ascertain from the

regulation what protection the 'agency' means to give against the bias that any kind of fusion makes possible". The court specifically reserved final decision as to whether, by a published regulation, the agency could make an investigating or prosecuting officer subordinate to the deciding officer who is other than a member of the body comprising the agency.

In the instant case, pursuant to the same regulations, the complaint before the Post Office Department was filed and prosecuted by the Assistant General Counsel of the Fraud Division of the Post Office Department, and the final decision on appeal was made by the Acting General Counsel of the Post Office Department, who signed the fraud order. As to procedure the instant case is on all fours with Columbia Research, supra.

The validity of the regulations was not raised by the attorney for the plaintiff in this court, nor was that question raised in the District Court in the Columbia Research case. Nonetheless, the unlawfulness of the instant order is established by the decision of the Court of Appeals in Columbia Research. The plaintiff is entitled to summary judgment and will settle an order consistent with this opinion.