Klaytan W. KIRBY, Appellant,

v.

Leslie N. SHAW, individually and as Post-
master of the City of Los Angeles,
State of California, Appellee.

No. 19822.

United States Court of Appeals
Ninth Circuit.

March 24, 1966.

---

Edwin M. Rosendahl, Los Angeles, Cal.,
for appellant.

Manuel L. Real, U. S. Atty., Donald A.
Fareed, Asst. U. S. Atty., Chief, Civil
Sec., Milan M. Dostal, Asst. U. S. Atty.,
Los Angeles, Cal., for appellee.

Before CHAMBERS and BROWNING,
Circuit Judges, and MUECKE, District
Judge.

BROWNING, Circuit Judge:

On November 23, 1962, following a full
trial-type hearing, the Judicial Officer
of the Post Office Department issued a
fraud order under 74 Stat. 654 (1960), 39
U.S.C.A. § 4005,[1] denying use of the

---

1. The pertinent provisions of 39 U.S.C.A. §
4005 read as follows:

"(a) Upon evidence satisfactory to the
Postmaster General that any person is
engaged in conducting a scheme or de-
vice for obtaining money or property
through the mail by means of false or

fraudulent pretenses, representations, or
promises; * * * the Postmaster Gen-
eral may—

(1) direct postmasters at the office at
which registered letters or other letters
or mail arrive, addressed to such a
person or to his representative, to re-

mails to appellant, who was doing business under the name "Science of Life," for the sale of pills called "Stagg Bullets." The order was based upon a finding that appellant had fraudulently misrepresented that the product was capable of restoring sexual potency.

On March 9, 1964, the General Counsel of the Department filed a petition with the Judicial Officer seeking the issuance of a "supplemental order" pursuant to Rule 30 of the Department's Rules of Practice applicable to fraud order proceedings, 39 C.F.R. § 201.30.[2]

The petition alleged that appellant was distributing through the mail an advertising circular "offering for sale essentially the same product based on essentially the same misrepresentations as previously employed." The product was now called "Formula AZ–696 Activators"; and was distributed by appellant under the name "Eroc Druid (G.A.)." The petition stated that "According to the report of our medical expert dated February 20, 1964, the formula of the current product is essentially the same as the product previously sold by [appellant] in the 'Science of Life' enterprise and found to be just as worthless for the purposes advertised." A copy of the advertising circular was attached to the petition, but no copy of the medical report was attached.

Appellant filed an answer and application for hearing. He admitted the distribution of the circular attached to the petition, but denied "that his present product is either essentially the same product as that previously distributed or that such product is based on essentially the same misrepresentations or on any misrepresentations at all." He asserted that he lacked notice of the charges against him and was deprived of the opportunity to meet them in the absence of knowledge of the contents of the medical report upon which the general allegations in the petition were based. He requested a hearing, alleging that the difference in the chemical composition of the two products and the effect of "Activators" upon the human body would be established by the testimony of witnesses at the hearing. He stated that he would present testimony of expert witnesses to controvert any such witnesses produced by the General Counsel, and he listed three proposed witnesses by name: one a physician who "would testify to the chemical content and effect on the human body of [appellant's] product"; and two who "would testify as to the efficacy of [appellant's] product to negate fraud."

The General Counsel responded by filing a "supplemental petition." He opposed the hearing requested by appellant. He contended that the advertising circulars which were before the Judicial Officer established that the two products were sold under essentially the same representations. He asserted that the report of his medical expert (a Dr. Campbell), a copy of which was said to be attached to the "supplemental petition," established that the difference in ingredients had

turn the registered letters or other letters or mail to the sender marked 'fraudulent' * * * and

(2) forbid the payment by a postmaster to such a person or his representative of any money order or postal note drawn to the order of either and provide for the return to the remitters of the sums named in the money orders or postal notes."

2. 39 C.F.R. § 201.30 reads in full as follows:

"When the General Counsel or his designated representative shall have reason to believe that a person is evading or attempting to evade the provisions of any such order by conducting the same or a similar enterprise under a different name or at a different address he may file a petition with accompanying evidence setting forth the alleged evasion or attempted evasion and requesting the issuance of a supplemental order against the name or names allegedly used. Notice shall then be given by the Docket Clerk to the person that the order has been requested and that an answer may be filed within ten days of the notice. The Judicial Officer, for good cause shown, may hold a hearing to consider the issues in controversy, and shall, in any event, render a final decision granting or denying the supplemental order."

no therapeutic significance with respect to the purpose for which the products were offered. He argued that appellant's answer offered nothing but denials, and that "absent submission by [appellant] of a medical report or some acceptable medical affirmation tending to establish the alleged dissimilarity of products," no "triable issues exist."

Five days later, and before the "supplemental petition" had been served upon appellant, the Judicial Officer denied appellant's request for hearing and issued the order sought by the General Counsel. The Judicial Officer held that under Rule 30 a hearing was discretionary, and that no hearing was necessary in the circumstances of this case. On the merits, the Judicial Officer held that the two products, and the representations under which they were sold, were essentially the same. "Looking at the advertisements for 'Stagg Bullets' and that of 'Activators,'" the Judicial Officer wrote, "one can see that some changes have been made but they are not significant." As to the identity of the two products, the Judicial Officer continued, "The formula for 'Stagg Bullets' and that of 'Activators' is the same with the exception of the ingredient 'damiana.' The directions are the same on both bottles." The Judicial Officer concluded, "The similarity of the advertisements, those of the formula, and those of the directions show that the present product is so much like the product of 'Stagg Bullets' and the advertisements are so similar that the Judicial Officer hereby issues a supplemental fraud order to cover the name 'Eroc Druid' at Los Angeles, California."

Appellant petitioned for revocation of the order. He alleged that he was not served with a copy of the General Counsel's "supplemental petition" until after the Judicial Officer's order was issued; and was not, even then, furnished with a copy of Dr. Campbell's report—notwithstanding the recitation in the "supplemental petition" that a copy was attached. Appellant contended that he was entitled by the Due Process Clause of the Fifth Amendment and by the provisions of the Administrative Procedure Act to notice of the contents of Dr. Campbell's report, to an opportunity to reply to the "supplemental petition," and to a hearing on the issues. Appellant's petition for revocation was denied. A copy of Dr. Campbell's report was mailed to appellant with the order of denial.[3]

Appellant brought suit in the district court to enjoin the enforcement of the order. Judgment was entered denying relief. We reverse.

■ Postal fraud proceedings under 39 U.S.C.A. § 4005 must comply with sections 5, 6, and 7 of the Administrative Procedure Act, 60 Stat. 239 (1946), 5 U.S.C.A. §§ 1004–1006 [Cates v. Haderlein, 342 U.S. 804, 72 S.Ct. 47, 96 L.Ed. 609 (1951), reversing 189 F.2d 369 (7th Cir.); Olesen v. Stanard, 227 F.2d 785, 788 n.7 (9th Cir. 1955); see also Stanard v. Olesen, 74 S.Ct. 768, 770, 98 L.Ed. 1151 (1954) (Mr. Justice Douglas); Door v. Donaldson, 90 U.S.App.D.C. 188, 195 F.2d 764 (1952); see generally, Comment, 35 N.Y.U.L.Rev. 1201 (1960); Cutler, 47 Nw.U.L.Rev. 72 (1952)]; and we see no basis for distinguishing, in this regard, between initial fraud order proceedings and "supplemental" ones.[4]

---

3. Dr. Campbell's report stated that the formula for "Activators" was the same as that for "Stagg Bullets" except for the addition of the botanical ingredient Damiana "which would not make for any significant difference between the two formulations." It was stated that "In the early 1900's Damiana was used empirically in the treatment of sexual impotence, but long since has been discarded from the medical armamentarium for such use." The report summarized the causes and treatment of impotency, and concluded

"The use of Formula AZ–696 'Activators' will not be an adequate substitute for the many measures of treatment necessary for the correction of the causes of impotency enumerated above."

4. Contrary to appellee's argument, this is patently not a case within the "inspections, tests, or elections" exception to § 5 of the Act, 5 U.S.C.A. § 1004(3), 60 Stat. 239 (1946). Cf. Door v. Donaldson, 90 U.S.App.D.C. 188, 195 F.2d 764, 766 (1952).

The government argues that the hearing requirement of section 5(b) of the Act was not applicable to the 1964 "supplemental" proceeding because the issues of fraud and identity of the violator had been finally determined in the 1962 proceeding, and the only issue before the Judicial Officer when a "supplemental" order was sought was "whether the same product or a similar product was being advertised with the same representation and by the same operator of the business." But even if we assume that the issue of actual intent to deceive [Reilly v. Pinkus, 338 U.S. 269, 276–277, 70 S.Ct. 110, 94 L.Ed. 63 (1949); Brandenfels v. Day, 114 U.S.App.D.C. 374, 316 F.2d 375, 378 n. 4 (1963)] could be decided without a hearing, the issue which the government propounds could be resolved only in accordance with the requirements of section 5 of the Administrative Procedure Act. The burden rested upon the Post Office Department, as proponent of the order (60 Stat. 241 (1946), 5 U.S.C.A. § 1006(c)), to at least establish that the two products were essentially the same and were offered for sale by appellant on essentially the same representations. And with respect to these issues appellant was entitled to notice of the matters of fact asserted (60 Stat. 239 (1946), 5 U.S.C.A. § 1004(a) (3)), and, if the facts asserted were in good faith controverted, to an opportunity to submit rebuttal evidence and conduct cross-examination. 60 Stat. 241 (1946), 5 U.S.C.A. § 1006(c).

The government contends that summary proceedings are essential to prevent "fly-by-night" operators from evading the statute simply by changing the name, address, and inconsequential details of their fraudulent enterprise. The Department's claim of necessity has been subjected to searching criticism. See 31 Ind.L.J. 257, 266–68 (1956). Other remedies are available to the government [Hart, 11 Food Drug Cosmetic L.J. 245, 258–60 (1956)], including criminal sanctions. 62 Stat. 763 (1948) as amended, 18 U.S.C.A. § 1341; 62 Stat. 763 (1948), 18 U.S.C.A. § 1342; see Comment, 35 N.Y.U.L.Rev. 1201, 1204–05 (1960). Moreover, Congress has indicated that the power conferred upon the Postmaster General to refuse to deliver mail to persons conducting fraudulent schemes must be "zealously watched and strictly confined" [Hannegan v. Esquire, Inc., 327 U.S. 146, 156 n. 18, 66 S.Ct. 456, 90 L.Ed. 586 (1946); see also Toberoff v. Summerfield, 256 F.2d 91, 94 (9th Cir. 1958)]; and there is substantial evidence that Congress intended to deny the Postmaster General the power, which he now asserts, to base such a final refusal upon a summary determination. In 1960 Congress adopted the provision now found in 39 U.S.C.A. § 4007, authorizing the district court "upon a showing of probable cause to believe the statute is being violated" to enter a temporary restraining order directing the detention of defendant's incoming mail pending conclusion of administrative proceedings under 39 U.S.C.A. § 4005 or § 4006. It is unlikely in the extreme that Congress would have required that a temporary restraining order be conditioned upon a showing of probable cause in a judicial hearing, but at the same time would have intended that an administrative order detaining mail permanently could be issued without any hearing at all.[5]

---

5. Earlier legislation permitting summary impounding of allegedly obscene materials did not authorize summary impounding of allegedly fraudulent materials. Act of July 27, 1956, ch. 755, § 1, 70 Stat. 699. See Greene v. Kern, 174 F.Supp. 480, 484–485 (D.N.J.1959), affirmed per curiam 269 F.2d 344 (3d Cir. 1959). Bills which would have permitted summary impounding of fraudulent as well as obscene material failed of passage in the 82d Congress (H.R. 5850), the 83d Congress (H.R. 569), and the 84th Congress, 1st sess. (H.R. 174).

Even as to obscene materials, the 1956 statute limited the effectiveness of the summary order to 20 days, unless extended an additional 20 days by a district court upon a showing of probable cause. Moreover, Congress thought it necessary to expressly exempt the proceeding from the Administrative Procedure Act. See §

We do not mean to suggest that the Postmaster General may never issue a fraud order without first holding a full, trial-type hearing. We do not assume that Congress intended the Postmaster General to perform a useless act [cf. United States v. Storer Broadcasting Co., 351 U.S. 192, 205, 76 S.Ct. 763, 100 L.Ed. 1081 (1956)]; and the Postmaster General would not be without power to dispense with an evidentiary hearing where it clearly appeared from the administrative record that there was no genuine issue of material fact. Cf. Railway Express Agency, Inc. v. CAB, 345 F.2d 445, 120 U.S.App.D.C. 228 (1965); NLRB v. J. R. Simplot Co., 322 F.2d 170 (9th Cir. 1963).

But this doctrine cannot justify the action taken here. Perhaps the essential identity of the representations regarding the two products was susceptible of summary determination from the face of the advertising circulars. But the petition, unaided by Dr. Campbell's report, contained only unenlightening generalizations which failed to disclose the factual basis for the General Counsel's conclusion that the products were identical in effect, though admittedly different in content. True, appellant's answer was simply a general denial, but we do not see how more could be required of him in the absence of notice of the specifics of the General Counsel's case. Thus, as the record stood, the General Counsel alleged that the products were identical and equally inefficacious, and that his medical witness supported this view, while appellant denied that the products were identical and promised expert medical testimony that his present product was both different and effective. On this record the Judicial Officer could not conclude that there were no factual issues.

The General Counsel argues, however, that in the course of the 1962 hearing appellant conceded that medical science did not recognize the existence of aphrodisiacs; and, therefore, as the district court held, "If we construe plaintiff's advertising as offering for sale a sex stimulant or aphrodisiac—and it cannot realistically be interpreted otherwise—plaintiff is now in the anomalous position of demanding a hearing to determine the value of a product which he himself has stated is ineffective." Aside from other difficulties with the argument, appellant's concession as to the state of medical knowledge in 1962 could not estop him from asserting, as he did, that current scientific knowledge was to the contrary.

We have assumed thus far that Rule 30, 39 C.F.R. § 201.30, establishes a procedure applicable only where there are no contested issues of material fact, as does Rule 56, Fed.R.Civ.P. That assumption is doubtful. Rule 30 appears to contemplate adjudication of contested issues of fact without a hearing, in the discretion of the Judicial Officer. As we have indicated, Rule 30, so construed, would be contrary to the Administrative Procedure Act. If Rule 30 is intended to apply only

---

1(c), Act of July 27, 1956, supra. In recommending the legislation, the Senate Committee said:

"The committee recognizes that even in its present form the bill gives the Postmaster General extraordinary and summary powers to impose a substantial penalty by impounding a person's mail for up to 20 days in advance of any hearing or any review by the courts. Such power is directly contrary to the letter and spirit of normal due process, as exemplified by the Administrative Procedure Act, which requires a hearing before any penalty may be imposed. The Post Office Department has made its case for this legislation on the grounds that a temporary and summary procedure is required to deal with fly-by-night operators using the mails *to defraud* or to peddle pornography, who may go out of business—or change the name of their business or their business address—before normal legal procedures can be brought into operation." (S.Rep. No. 2234, U.S.Code Cong. & Admin. News, 84th Cong., 2d sess., 1956, pp. 3598–3599.) (Emphasis added.) As will be noticed, the Senate Committee mistakenly supposed that the statute applied to fraudulent as well as obscene materials. The error appears to have been common (H.R.Rep. No. 2073, 84th Cong., 2d sess., pp. 1, 2 (1956); 102 Cong.Rec. 12288, 12289 (1956), (Sen. Johnson of S.C.).

where the record establishes an absence of disputed factual issues, we doubt that it conveys this purpose with sufficient clarity to create a procedure binding upon persons charged in a fraud proceeding, upon publication in accordance with 5 U.S.C.A. § 1003(a).  See Gonzalez v. Freeman, 118 U.S.App.D.C. 180, 334 F.2d 570, 577–578 (1964).

Reversed.