**In the Matter of an Application for a Search Warrant of WILTRON ASSOCIATES, LTD.**

**No. M. 9–150.**

United States District Court
S. D. New York.

Jan. 16, 1970.

Robert M. Morgenthau, U. S. Atty., for Southern Dist. of New York, by Ross Sandler, Asst. U. S. Atty., New York City, for plaintiff.

Jerry Zohn, New York City, pro se.

MANSFIELD, District Judge.

Purporting to act pursuant to Rule 41(e), F.R.Cr.P., Jerry Zohn, Esq., an attorney with offices at 225 East 46th Street, has moved to vacate a warrant issued by United States Commissioner Bishopp on November 14, 1969, for the search of premises of Wiltron Associates, Ltd. ("Wiltron" herein) of the same address and the return of certain stock certificates seized by Government agents from Zohn's law office. For the reasons stated below, the motion is denied.

Zohn has in the past acted as legal counsel for Wiltron and one Emanual Lester, its founder. On November 13, 1969, after Lester had attempted to dispose of stolen securities having a face amount of approximately $6 million, he was arrested in Toronto in possession of photocopies of over $1 million in stolen U. S. Treasury bills and certain papers

addressed to him, care of Wiltron, 225 East 46th Street, New York, N. Y. On the same day a search of his hotel room in New York City pursuant to warrant uncovered approximately $1 million in stolen securities, and additional correspondence addressed to him in care of Wiltron, which led the officers to obtain the search warrant under attack in the belief that more of the $6 million of stolen securities would be found there.

Wiltron itself neither owned nor listed offices at 225 East 46th Street. However, mail has been addressed and sent to it in the past in care of Zohn, who is located in Suite 1–A, the same suite number found on correspondence addressed to Lester which had been seized in his hotel room. Armed with the search warrant under attack the agents went to 225 East 46th Street, inspected the names listed for various offices in the building, and recognized the name of one Edward Friedland, a colleague of Zohn listed for Suite 1–A, as a person who had been convicted for possession of stolen securities and sentenced to five years imprisonment. They then entered, produced the search warrant, and advised Zohn of their mission.

Over the protests of Zohn to the effect that Wiltron was neither a tenant nor occupant of Zohn's office, that it did not maintain its records there, and that any mailing privileges had been terminated, the agents conducted an extensive search of Zohn's records. The search resulted in the seizure of two bogus hand stamps, one certificating stock ownership and the other a signature guarantee stamp bearing the name of Empire Trust Company, various stock certificates for 11,000 shares of Comutrix Corp., 70,000 shares of Meter Maid Industries, Inc., and 1,000 shares of Photo Mark Computer Co. Each of the stock certificates bear the bogus Empire Trust Company stamps. Lester had used such bogus Empire Trust Company stamps to effectuate illegal transfers of stolen securities.

Zohn attacks the seizure on the grounds that (1) no probable cause existed to justify issuance of the warrant; (2) the warrant was invalid on its face; and (3) the search made pursuant to it was excessive.

■ At the outset we are faced with the fact that since Zohn has been neither indicted nor charged with any crime, he has no standing to invoke Rule 41(e), since he is not a "person aggrieved" by the alleged unlawful search and seizure. Cf. Di Bella v. United States, 369 U.S. 121, 82 S.Ct. 654, 7 L.Ed.2d 614 (1962); Lord v. Kelley, 223 F.Supp. 684, 687 (D.Mass.1963). Our jurisdiction, therefore, must rest upon the general supervisory power of federal courts over federal law enforcement officials acting within their territories. Lord v. Kelley, *supra* at 687–688 and cases cited; Silbert v. United States, 275 F.Supp. 765, 767 (D.Md.1967). Such jurisdiction is discretionary, not mandatory, and should be sparingly exercised rather than used as a means of imposing further conditions, not prescribed by rule or statute, that will have the effect of impeding law enforcement officials in the conduct of pre-indictment investigations. Grant v. United States, 282 F.2d 165 (2d Cir. 1960); Centracchio v. Garrity, 198 F.2d 382 (1st Cir.), *cert. denied*, 344 U.S. 866, 73 S.Ct. 108, 97 L.Ed. 672 (1952); Parrish v. United States, 256 F.Supp. 793 (E.D.Va.1966); *appeal dismissed*, 376 F.2d 601 (4th Cir. 1967); Silbert v. United States, *supra*.

■ After careful review of the affidavits filed by the parties, we are convinced that the circumstances surrounding the seizure at issue here do not call for exercise of discretionary judicial intervention, and that it is doubtful whether, even if Zohn were entitled to invoke Rule 41(e), relief should be granted. Apart from Zohn's lack of proprietary interest in the seized securities, there is every indication that they would in any event be the subject of competing claims

of ownership on the part of others and that, even if suppressible as evidence, they would be "subject to lawful detention" (Rule 41(e)) as the fruits or instrumentalities of criminal activities

With respect to the 11,000 shares of Comutrix Corp., the Government states under oath that these certificates, prior to Zohn's custody, had been obtained by the First Western Investment Corp. by fraud from Comutrix itself, following which the shares were transferred to Lester, who used the bogus Empire Trust stamp to give them the appearance of being negotiable in blank, even though Comutrix had already issued a "stop transfer" on the shares. As for the 70,000 shares of Meter Maid Industries, Inc., the Government states that they had apparently been in the hands of one Anthony Romano, described by Zohn as "presently under indictment in Buffalo for robbery, extortion and related crimes with four other members of a Mafia family" (Reply Aff. Dec. 1, 1969, p. 5). Romano is described by another affiant as a partner of Lester. According to the Government Lester obtained the shares from Romano and then used the bogus Empire Trust Company stamp to transfer them in blank.

Zohn does not dispute the fact that he received the 1,000 shares of Photo Mark Computer Corp. from Lester, but states that they were being held for Lester's wife and son in connection with a pending family court proceeding. The Government, on the other hand, states that Lester had used the bogus Empire Trust Company stamp to transfer those securities in violation of an outstanding S.E.C. injunction prohibiting transfer.

Thus, although Zohn disputes some of the statements made under oath by the Assistant United States Attorney in charge with respect to the ownership and illegal use of the seized shares, and contends that at least some of the certificates are owned by other persons (e. g., Rex Fair, Inc., Royal Overseas, Ltd.), he does not claim any personal ownership in the shares. Furthermore, the circumstances set forth by the Government, particularly the use of a bogus Empire Trust Company stamp for the purpose of unlawfully transferring certificates, indicate *prima facie* that the certificates have been the subject of criminal conduct on Lester's part.

In the absence of Zohn's ability to establish ownership, and in view of the conflict as to the ownership of the certificates as between others, the certificates should not in any event be returned to Zohn, at least until ownership is established. See United States v. Margeson, 259 F.Supp. 256, 272 (E.D.Pa.1966); United States v. Birrell, 243 F.Supp. 38, 41 (S.D.N.Y.1965).

█ Furthermore, even assuming *arguendo* that Zohn has standing to invoke Rule 41(e), there is ample evidence that the certificates were used either in furtherance of criminal activity, and thus constituted "derivative contraband." United States v. Jeffers, 342 U.S. 48, 52, 72 S.Ct. 93, 96 L.Ed. 59 (1951); Trupiano v. United States, 334 U.S. 699, 701, 68 S.Ct. 1229, 92 L.Ed. 1663 (1948); United States v. Pardo-Bolland, 229 F. Supp. 473, 478 (S.D.N.Y.1964), or as the fruit of criminal activity, United States v. Margeson, *supra* 259 F.Supp. at 272. Either status demands retention by the Government. If the property is ultimately to be returned, the proper procedure, in view of the conflicting claims of ownership, lies in the institution of a civil suit in which the Government would play the role of stakeholder. Otten v. Marasco, 353 F.2d 563 (2d Cir. 1965); United States v. Butler, 299 F.Supp. 778 (D.Mass.1969); Lord v. Kelley, 223 F.Supp. 684, 688 (D.Mass. 1963) (Wyzanski, J.); United States v. Smalls, 223 F.Supp. 387, 390 (S.D.N.Y. 1963) (Bonsal, J.).

For the foregoing reasons it is unnecessary for us to pass upon the legality of the search and seizure under attack.

The motion is denied.

It is so ordered.