In the Matter of SEARCH WARRANT FOR "PREMISES KNOWN AS ENCORE HOUSE (DOING BUSINESS AS CONSUMER FULFILLMENT, INC., ROBERT LANE, GLEN HEAD, NEW YORK)".

No. M 9–150 (RWS).

United States District Court, S.D. New York.

Oct. 19, 1983.
Opinion On Motion for Return of Property Nov. 14, 1983.

Stillman, Friedman & Shaw, P.C., New York City, for movants; Edward M. Shaw, New York City, of counsel.

Rudolph W. Giuliani, U.S. Atty., S.D. N.Y., New York City, for U.S.A.; Stuart R. Grabois, Asst. U.S. Atty., New York City, of counsel.

OPINION

SWEET, District Judge.

Encore House, Inc. and several other companies (the "Companies") have moved this court, pursuant to the court's general supervisory powers, to order the United States Attorney for the Southern District of New York to return to the Companies about $1 million in checks payable to the Companies that were seized under a search warrant. For the reasons stated below, the motion is granted.

The following facts are taken from the parties' affidavits and have not been disputed before this court. The Companies oper-

ate various aspects of a mail order business, selling several consumer products including binoculars and diet pills. The Companies reach consumers by advertisements in publications and by direct mailings. Consumer Fulfillment, Inc., one of the companies, receives and processes customer orders and payments to others of the Companies and stores and delivers ordered products.

The Government has been conducting a criminal investigation into fraudulent misrepresentation of products advertised by the Companies and the non-delivery of customer orders. The major part of the investigation relevant to this motion appears to concern advertisements for binoculars. The Government alleges that the advertisements greatly exaggerated the magnification and quality of the binoculars.

On July 5, 1983, the United States Attorney for the Southern District of New York, pursuant to its investigation of what the Government's affidavit describes as "conspiracy to commit mail fraud and mail fraud committed" by the Companies, applied for and received authorization for three search warrants. On July 6, 1983, pursuant to the search warrants, the Government seized numerous records and documents at three Company office locations. Among the papers seized at Consumer Fulfillment, Inc. were approximately $600,000 in undeposited checks made payable to the Companies and about $400,000 in checks included with customer orders in unopened mail. By Government permission, the Companies have been able to make copies of the seized documents. In addition, in recent months, the Companies and the Government have on several occasions discussed return of the checks. In the negotiations, it was proposed that the Companies would return the checks to consumers with an accompanying letter notifying the consumers of the Government's claims of false advertising, but disputes concerning the Companies' further solicitations of the consumers prevented a resolution of the dispute giving rise to this motion. The Government still holds the checks. No criminal proceedings have been commenced against the Companies.

In moving to have the checks returned, the Companies do not object to the legality of the July 6 search.[1] Instead, the Companies appeal to this court's general supervisory powers and argue that "the government has no right whatsoever to withhold the checks." The Companies claim that the checks lack evidentiary significance, because information such as customer names and addresses and the date and amount of the order can be obtained from other records the Government possesses, and because the Companies state that they will stipulate to the admissability into evidence of copies of the checks or summaries of the data they contain. The Companies also claim that the Government may not withhold the checks because the Government has not established that the Companies' advertising was fraudulent, nor has it charged the Companies with a crime, and because the Government has no interest in the property that would justify its retention. Further, the Companies allege irreparable injury on the basis that the checks will become non-negotiable six months after their dates.

In response, the Government maintains that the checks are evidence and instrumentalities of a mail fraud scheme as well as the fruits of that crime and that if the checks are returned, the Companies would deposit the checks and complete the fraudulent scheme.

■ Fed.R.Crim.P. 41(b)(1) authorizes the Government to seize property that constitutes evidence of a crime. However, the Companies have pointed out that they would be willing to stipulate to the admissability into evidence in a trial against it of copies of the checks or summaries of the data the checks contain. The Government has not explained why this arrangement would not be satisfactory—indeed, the Government tentatively agreed to a scheme

---

1. A motion for the return of unlawfully seized property may be made under Fed.R.Crim.P. 41(e). This is not such a motion.

under which the checks would be returned to consumers, suggesting that use of the checks as evidence was not crucial. As a result, there has been no showing of a necessity to retain the checks for evidentiary purposes.

■ The Government may also seize property if it can show probable cause that the property is the fruit of a crime. Fed.R. Crim.P. 41(b)(2); *Warden v. Hayden,* 387 U.S. 294, 306–8, 87 S.Ct. 1642, 1949–50, 18 L.Ed.2d 782 (1967); *Weeks v. United States,* 232 U.S. 383, 392, 34 S.Ct. 341, 344, 58 L.Ed. 652 (1913). The Companies do not dispute that there was probable cause to seize the checks at the time the warrant was issued. The question that faces this court, instead, is whether the continued retention of the checks as the fruits of a crime is reasonable in light of the circumstances presented here.

Two thorough and well-reasoned recent opinions by the Courts of Appeals of the Third and Seventh Circuits appear to be the most relevant authority. In *United States v. Premises Known as 608 Taylor Ave.,* 584 F.2d 1297 (3d Cir.1978), the Court, reasoning by analogy with cases considering the Government's right to maintain possession of seized property after the termination of criminal proceedings, established a reasonableness test to govern the Government's right to hold property before criminal proceedings have been commenced:

> We hold that the district court's determination of the reasonableness of the retention of Margolis' property should have included consideration of the purposes for which the property is being held. If the government's sole interest in retaining the currency is for its use as evidence, the court should consider whether this purpose would be equally well served by the alternatives to holding the money itself which were suggested by Margolis. As in its determination of timeliness, the court should be sensitive to the need to balance the owner's interests and the often complex and varied governmental interests in retaining evidence for trial. If the government's retention is unreasonable

considering all circumstances, the district court as a matter of its supervisory powers should order the return of the seized property.

> Of course the district court may find governmental interests in Margolis' property in addition to its evidentiary value. Although the government has not strongly pressed this point on appeal, the possibility of forfeiture of the currency suggests itself. If the property is being held subject to possible forfeiture, retention might be permitted even if no evidentiary justification is found. [citations omitted] If this valid purpose is shown to the district court, the court must look to the laws relating to the commencement of forfeiture actions to determine whether the holding of the property without commencing proceedings is reasonable.

*Premises Known as 608 Taylor Ave.* concerned a motion for the return of $12,000 in currency seized under a warrant relating to gambling contraband. The Court remanded the case to the district court, instructing it to consider the Government's possible interests in the currency, evaluating each such interest in light of possible alternatives to seizure and the reasonableness of the need for and length of the seizure.

*Mr. Lucky Messenger Service, Inc. v. United States,* 587 F.2d 15 (7th Cir.1978), also involved a motion for the return of seized currency. The Government had seized $65,000 in currency under a warrant issued in aid of a grand jury investigation, and had held it for 17 months without bringing charges against plaintiff. The Court remanded the case to the district court, instructing it to consider the following factors in deciding whether return of the property was proper:

1) "whether the Government has adequate justification for withholding the plaintiff's $65,000 for over seventeen months without bringing any charges against the plaintiff";

2) "whether the plaintiff has an individual interest in and need for the material whose return it seeks.... Cases in which the plaintiff was unable to satisfy

this factor involved contraband to which the movant was not legally entitled, or property for which the movant had no noteworthy need, such as bet slips or wager tickets";

3) "whether [the plaintiff] would be irreparably injured by denial of the return of the property"; and

4) "whether [the plaintiff] has an adequate remedy at law for redress of its grievance."

587 F.2d at 17.

*In re Wiltron Associates, Ltd.,* 49 F.R.D. 170, 173 (S.D.N.Y.1970) (Mansfield, J.) considered the circumstances relevant to and evidence necessary for a motion for the return of property seized as fruits. In that case, the Government had seized stock certificates pursuant to a warrant from one Zohn, a lawyer for someone who had been arrested for attempting to dispose of stolen securities. Zohn moved to vacate the warrant and to return the certificates. Zohn had not been indicted or charged with any crime, and thus could not invoke Fed.R. Crim.P. 41(e). Instead, then-District Judge Mansfield considered the motion as brought, as is the present action, under the court's general supervisory powers over federal law enforcement officials. The court denied Zohn relief, noting that (1) Zohn did not claim any personal ownership in the shares, and there was a conflict as to who did own them; and (2) "the circumstances set forth by the Government, particularly the use of a bogus ... stamp for the purpose of unlawfully transferring certificates, indicate *prima facie* that the certificates have been the subject of criminal conduct . . . ." As a result, there was "ample evidence" that the certificates were either used in furtherance of criminal activity or were the fruits of criminal activity. *See also Matter of 2029 Hering Street,* 464 F.Supp. 164, 173 (S.D.N.Y.1979) (evidence presented at a suppression hearing "tended to show that the seized property may have been the fruit of an illegal scheme" and thus would not be returned); *United States v. Margeson,* 259 F.Supp. 256, 272 (E.D.Pa. 1966) ("From the facts gleaned at the suppression hearing, there is strong evidence

that the checks and money seized ... was the fruit" of a bank robbery and therefore the checks and money would not be returned).

A *Wiltron*-type analysis of the facts of this case requires the granting of the Companies' motion. Unlike the petitioner in *Wiltron,* the Companies do claim ownership of the checks. More significantly, the circumstances set forth by the Government in this case do not make out a *prima facie* case that the checks are fruits of a crime. Although it is undisputed that there was probable cause to seize the checks, the Government has not met the higher standard of proof which I believe to be involved in the present determination, *see Mr. Lucky, supra; Premises Known as 608 Taylor Ave., supra; Wiltron, supra.* Indeed, no direct evidence of the crime has been presented here beyond the probable cause showing which is challenged by the Companies' denial of the commission of a crime.

■ In addition, the circumstances of the present case that bear on a determination of reasonableness under the scheme set out in *Mr. Lucky* and *Premises Known as 608 Taylor Ave.* do not justify continued retention. The Government has presented this court with no justification of the more than three months that the checks have been retained other than to prevent the completion of the alleged mail fraud. Further, the Government does not dispute that the continued retention of the checks may make them uncollectable. *See* N.Y.U.C.C. § 4-404 (McKinney 1964). In this situation, therefore, retention threatens to become confiscation, and the potential injury to the Companies is much greater than in an action to recover seized cash or other nonperishable property.

Considering a harm of this sort, lacking supporting evidence of any Government need for a retention period of this length, and lacking sufficiently strong evidence that the checks are indeed fruits of a crime, the Companies' request is granted. However, because evidence supporting the Government's claim that the checks are

fruits and justifying the length of the retention period may exist, this order will be stayed for fifteen (15) days to permit appellate review or any additional submission by the Government within ten (10) days. In the latter event the Companies will have five (5) days to file any answering papers.

The motion is therefore granted and the order requiring return of the checks stayed for fifteen (15) days.

**IT IS SO ORDERED.**

## ON MOTION FOR RETURN OF PROPERTY

By opinion dated October 19, 1983, this court granted movants' motion for the return of about $1 million in checks payable to the movants that were seized under a search warrant. The facts of this matter are set forth in that opinion. However, the court stayed that order to permit additional submissions by the Government, and responses by the movants, to support the Government's claim that the checks are fruits of a crime and to justify the length of the retention period. Those additional submissions do not require a different result, and the pending motion is granted.

■ The government has presented an affidavit from a United States Postal Inspector presenting additional evidence that the movants' advertisements for binoculars, diet pills and a purported vibrating muscle-toning device constituted mail fraud under 18 U.S.C. § 1341 or conspiracy to commit mail fraud under 18 U.S.C. § 371. Even assuming the evidence now before the court is sufficient to show that certain of the checks may be fruits of the crime of mail fraud, the government has not submitted evidence to support the retention of all of the $1 million in checks that were seized. The Government has not disputed the affidavit submitted by movants stating that only a portion of the checks were sent to movants for the purchase of the goods that the Government claims were fraudulently sold. As a result, the government has failed to establish by a preponderance of the evidence that the bulk, or any particular portion of the checks are fruits of a crime.

In addition, the Government has presented the court with no additional information justifying the more-than-four-month period during which it has held the checks without bringing charges or an indictment. According to an affidavit by movants which is not contradicted by the government, the checks seized will soon become stale and nonnegotiable. Because of this special situation, to allow the Government to continue to retain the checks is in effect to allow it to confiscate the checks. As the Court noted in *United States v. Premises Known as 608 Taylor Ave.,* 584 F.2d 1297 (3d Cir.1978) (discussed in the October 19 opinion), if forfeiture of property is the purpose of the Government's retention, "the court must look to the laws relating to the commencement of forfeiture actions to determine whether the holding of the property without commencing proceedings is reasonable." *Id.* at 1304.

The government has just such a proceeding available to it in this case. Under 39 U.S.C. § 3005, after a hearing that complies with the Administrative Procedure Act, *Kirby v. Shaw,* 358 F.2d 446, 448 (9th Cir. 1966), to establish that a person is obtaining money by mail fraud, the Postal Service may return mail addressed to that person to the sender. If forfeiture is indeed the Government's purpose, the Government has made no showing of why the mechanism established in 39 U.S.C. § 3005, with the additional procedural safeguards provided by that statute, is not adequate to accomplish that goal.

For these reasons, the movants' motion is granted. The checks shall be returned within ten (10) days of the date of this order.

**IT IS SO ORDERED.**